# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CORNELIUS NICHOLSON,
    *Plaintiff*,

    v.                                 No. 3:20-cv-209 (JAM)

AMANDA HANNAH *et al.*,
    *Defendants*.

## ORDER DISMISSING COMPLAINT PURSUANT TO 28 U.S.C. § 1915A

Plaintiff Cornelius Nicholson was a sentenced prisoner in the custody of the Connecticut Department of Correction ("DOC") during the events at issue. He filed this lawsuit *pro se* and *in forma pauperis* against several DOC officials, principally alleging that defendants obstructed his right to a speedy trial in a criminal case. For the reasons set forth below, I conclude that Nicholson has not alleged facts that give rise to plausible grounds for relief and I will dismiss the complaint without prejudice to filing of an amended complaint with additional facts.

## BACKGROUND

The following facts are alleged in the complaint and accepted as true only for purposes of this ruling. Doc. #1. Nicholson's claims arise from events that occurred during his confinement at Garner Correctional Institution as a sentenced prisoner. Doc. #1 at 8 (¶ 1).[1] On July 16, 2019, Nicholson handed a signed speedy trial notification request to Counselor Verastro and asked that his request be forwarded by certified mail to the Connecticut state court in connection with a case with docket number N23N-CR17-180176-S. *Ibid.*[2] Several days later, Nicholson submitted

---

[1] It is unclear whether Nicholson remains incarcerated. In May 2020, Nicholson filed a Notice of Appearance listing an address in Wallingford, Connecticut, which suggests he may have been released. *See* Doc. #12. Yet according to the Department of Correction website, Nicholson was sentenced in 2018 and his maximum release date is in 2023. *See* State of Connecticut Department of Corrections, Inmate Information, available at http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=273732 (last accessed June 8, 2020).

[2] The complaint at times excludes the "-S" suffix. Doc. #1 at 8 (¶ 1).

an inmate request to the records department for verification that it was delivered. *Ibid*. (¶ 2); *see also id*. at 17 (Ex. A). The next month, Record Specialist Parks directed Nicholson to speak with his counselor in response. *Ibid*. Counselor Verastro and Record Specialist J. Olson responded to Nicholson's further inquiries about his speedy trial notification request, suggesting that his paperwork had already been filed at Corrigan-Radgowski Correctional Center ("Corrigan") some months earlier. *Id*. at 8-9 (¶¶ 4-6); *see also id*. at 17 (Ex. A), 18 (Ex. B).

On September 19, 2019, Nicholson called the New Haven Superior Court Clerk's Office and was informed that his speedy trial notification had not been received by the court. *Id*. at 9 (¶ 8). He filed inmate requests for verification from Verastro that he had given her his speedy trial notification back in July, *id*. 9, 10 (¶¶ 9, 11), and Verastro responded that she handed his notification to the records department on July 17, 2019, *id*. at 10 (¶ 12); *see also id*. at 21 (Ex. E). On October 3, 2019, Nicholson filed a grievance. *Id*. at 10 (¶ 13). On November 13, 2019, Nicholson received a response from Warden Hannah stating "Your speedy trial paperwork for docket # N23N-CR17-0180176-S was submitted to the court on 10/9/2019 and again on 10/29/2019. The court received the paperwork on 11/1/2019." *Id*. at 22 (Ex. F); *see also id*. at 10 (¶ 14). Warden Hannah also indicated that Nicholson had exhausted DOC's administrative remedies. *Id*. at 22.

On November 20, 2019, Nicholson's criminal trial commenced. *Id*. at 11 (¶ 17). It is unclear from Nicholson's complaint whether this criminal trial is the same underlying case (with docket number N23N-CR-17-180176-S) that Nicholson references in his speedy trial notification request. *See id*. at 8 (¶ 1). But that same month Nicholson received a letter from his attorney Jason Goddard in reference to a case with "Docket No. N23N-CR17-0180176-S," and in the letter, Attorney Goddard informed Nicholson that he had filed the "Motion to Dismiss you

requested based on the speedy trial issue in your case." *Id*. at 11 (¶ 18); *see also id*. at 24 (Ex. H). Assuming that it is the same case, Nicholson does not indicate whether his case, with docket number N23N-CR17-180176-S, was dismissed, remains pending, or has resulted in his conviction. A search of convictions and pending criminal cases in the Connecticut state court revealed no case with that docket number.[3]

Nicholson alleges that Verastro's delay in filing his speedy trial notification request for disposition hindered Nicholson's eligibility for a level reduction from a level 4 inmate to a level 3 inmate, which prevented him from earning risk reduction credit. *Id*. at 14 (¶¶ 24-26); *see also id*. at 30 (Ex. N, Ex. O).

In February 2020, Nicholson filed this lawsuit, bringing claims under the First, Fifth, Sixth, and Fourteenth Amendments that are principally based on the delay in the delivery of his state speedy trial notification. Doc. #1 at 13, 15. Sometime between the events about which he complains and filing this lawsuit, Nicholson was transferred to Corrigan. *See id*. at 2. He names the following defendants: Warden Amanda Hannah, Counselor Kathleen Verastro, Record Specialist Terrie Parks, and Record Specialist J. Olson, as defendants in their individual and official capacities. *Id*. at 2-3.[4]

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss

---

[3] *See* State of Connecticut Judicial Branch, Criminal / Motor Vehicle Case Look-Up, available at https://www.jud.ct.gov/crim.htm (last accessed June 8, 2020).
[4] Nicholson additionally asserts state constitutional and statutory claims. *See* Doc. #1 at 13, 15. I will not address his state law claims now because this review for purposes of 28 U.S.C. § 1915A is limited to federal law claims.

the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

The Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

***Speedy trial***

Nicholson alleges that his right to a speedy trial under the Sixth Amendment was violated due to defendants' delay in delivering his speedy trial notification. *See* Doc. #1 at 13, 15.[5] The Supreme Court has explained that "[t]he speedy-trial right is 'amorphous,' 'slippery,' and 'necessarily relative.'" *Vermont v. Brillon*, 556 U.S. 81, 89 (2009) (quoting *Barker v. Wingo,* 407 U.S. 514, 522 (1972)). For these reasons, the Supreme Court has formulated a four-factor balancing test for evaluating a defendant's claim that his or her speedy trial right has been

---

[5] Connecticut by statute confers a right to speedy trial within 120 days for defendants who are imprisoned and make an affirmative request for speedy trial to the state court and the state's attorney. *See* Conn. Gen. Stat. § 54-82c. To the extent, however, that Nicholson relies on a violation of state law, I do not address any state law claims at this time, because there is no independent basis for federal jurisdiction over Nicholson's complaint absent a violation of federal law.

violated: "(1) the length of the delay; (2) the reasons for the delay; (3) whether the defendant asserted his right in the run-up to the trial; and (4) whether the defendant was prejudiced by the failure to bring the case to trial more quickly." *United States v. Ghailani*, 733 F.3d 29, 42–43 (2d Cir. 2013) (quoting *United States v. Cain*, 671 F.3d 271, 296 (2d Cir. 2012)).

Although "no single factor is dispositive and … each serves to guarantee a fundamental, enumerated right of the accused," the Second Circuit has explained that "'[t]he length of the delay is to some extent a triggering mechanism,' because until there exists 'some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.'" *United States v. Tigano*, 880 F.3d 602, 612 (2d Cir. 2018) (quoting *Barker*, 407 U.S. at 530).

Here, Nicholson has not demonstrated that he suffered a "presumptively prejudicial" delay. Nicholson's complaint alleges a four-month delay in the delivery of his speedy trial notification that he wished to file in his case with docket number N23N-CR17-180176-S, which is a relatively short length of time. *See United States v. Papachristou*, 2014 WL 2619902, at *2 (D. Conn. 2014) (listing cases with delays ranging from 24 to 28 months that have been upheld in the Second Circuit as constitutional).

Aside from his speedy trial notification itself, Nicholson's complaint makes no further suggestion that the State did not prosecute his case with customary promptness or that he suffered any prejudice from any such delay. *See Cain*, 671 F.3d at 296. Indeed, Nicholson provides no indication whether that case is still pending, has been dismissed, or has resulted in his conviction, and the case with docket number N23N-CR17-180176-S does not appear on the state court website, as noted above. And although a letter from Nicholson's attorney notes that a

5

motion to dismiss on the basis of a speedy trial violation was filed in the case with docket number "N23N-CR17-0180176-S," Doc. #1 at 11 (¶ 18), 24 (Ex. H), Nicholson does not allege whether the motion to dismiss was successful, which might indicate that his case was not, in fact, prosecuted with the requisite promptness. Accordingly, because the complaint does not include sufficient factual allegations for me to conclude as an initial matter that Nicholson suffered a presumptively prejudicial delay in his case with docket number N23N-CR17-180176-S, I will dismiss his speedy trial claim.

### *Access to the courts*

Nicholson further alleges that his right of access to the courts was violated when his speedy trial notification delivery was delayed by defendants. *See* Doc. #1 at 13, 15. It is well established that inmates have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996); *Miller v. Semple*, 2019 WL 6307535, at *4 (D. Conn. 2019) ("Prisoners have a constitutional right of access to the courts that may not be unreasonably obstructed by the actions of prison officials."). To state a claim for denial of access to the courts, a plaintiff must demonstrate that he suffered an actual injury, *see Lewis*, 518 U.S. at 351-53— that is, he must allege that "defendant's conduct deprived him of an opportunity to press some nonfrivolous, arguable cause of action in court," *Baker v. Weir*, 2016 WL 7441064, at *2 (D. Conn. 2016) (quoting *Brown v. Choinski*, 2011 WL 1106232, at *5 (D. Conn. 2011)). Here, because Nicholson does not allege anything about the outcome of his case for which he filed a speedy trial notification or whether any delay caused by defendants was harmful to him, there is no basis for a claim of denial of access to the courts. Therefore, I will dismiss any claim of denial of access to the courts.

*Due Process*

Nicholson also claims that defendants violated his due process rights under the Fifth and Fourteenth Amendments. *See* Doc. #1 at 13, 15. The Due Process Clause of the Fourteenth Amendment protects both a right to "substantive" due process and "procedural" due process. *See County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998); *Wilson v. Santiago*, 2020 WL 1989135, at *3 (D. Conn. 2020). A claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*). Substantive due process generally protects against the government's "exercise of power without any reasonable justification in the service of a legitimate governmental objective." *County of Sacramento*, 523 U.S. at 846. "The first step in substantive due process analysis is to identify the constitutional right at stake," then the court must "consider whether the state action ... was arbitrary in the constitutional sense and therefore violative of substantive due process." *Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir. 1994).

Thus, under either due process claim, Nicholson must begin by alleging that he had a protected liberty interest, for he makes no suggestion that the conduct of which he complains implicates a property interest or some other constitutional right. Liberty interests may arise from either the Constitution itself or "from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *see also Sandin v. Conner*, 515 U.S. 472, 483-84 (1995) ("States may under certain circumstances create liberty interests which are protected by the Due Process Clause."). In the prison context, which involves individuals whose liberty interests have already been severely restricted, a prisoner has a liberty interest protected under

7

the Due Process Clause only if the state created such an interest in a statute or regulation and the deprivation of that interest caused him to suffer an atypical and significant hardship in relation to the ordinary incidents of prison life. *See Sandin*, 515 U.S. at 484-88; *see also Tellier v. Fields,* 280 F.3d 69, 80 (2d Cir. 2000) ("As a result of *Sandin*, a prisoner has a liberty interest only if the deprivation of which he complains is atypical and significant and the state has created the interest by statute or regulation." (internal quotation omitted)).

Here, Nicholson does not make any allegation suggesting that he was subjected to an atypical and significant hardship due to the delay in the delivery of that speedy trial notification. Nor does Nicholson allege that his confinement was prolonged by the conduct of which he complains. DOC records indicate that during the events in question, Nicholson was already serving a six-year sentence that was imposed by a state court in 2018. In fact, Nicholson appears to have been released early—as indicated by his filing of an address in Wallingford in May 2020, he appears to no longer be incarcerated. *See* Doc. #12. Nicholson furthermore fails to give any explanation as to the disposition of his case with docket number N23N-CR17-180176-S, which is the case in which he filed a speedy trial notification. Without more, I cannot conclude that the delivery delay of the speedy trial notification in case N23N-CR17-180176-S was even related to Nicholson's preexisting term of confinement, let alone that the delay constituted a deprivation of a liberty interest that implicates the Due Process Clause.

Insofar as Nicholson relies on his claim that defendants' "dereliction and unnecessary delay in filing Nicholson's speedy trial notification" hindered his eligibility for a reduction of his classification from level 4 to level 3 and prohibited him from earning risk reduction earned credit, Doc. #1 at 14 (¶¶ 24-25), to allege a protected liberty interest, this is likewise insufficient. It is well settled that a prisoner has no protected liberty interest in his or her inmate classification.

*See Taylor v. Levesque*, 246 F. App'x. 772, 774 (2d Cir. 2007) (explaining that "prisoners generally do not have a protected liberty interest in classifications that impact their eligibility to participate in rehabilitative programs" and that "Connecticut has not granted inmates, by regulation or statute, a protected interest in their security classification; the matter is committed to the discretion of the Commissioner of Corrections") (citations omitted); *Wright v. Malloy*, 2016 WL 7115933, at *4–6 (D. Conn. 2016) (finding no liberty interest in earning risk reduction earned credit because "[a]lthough the Connecticut legislature has enacted statutes concerning parole eligibility or risk reduction earned credit, these statutes are expressions of the granting or withholding of legislative grace").

Accordingly, Nicholson has failed to adequately allege a protected liberty interest with respect to his claim that his speedy trial notification was delayed. I will therefore dismiss Nicholson's due process claim.

### *Equal Protection*

Nicholson finally brings claim against all defendants for violating his rights under the Equal Protection Clause of the Fourteenth Amendment. *See* Doc. #1 at 13, 15. "The Equal Protection Clause ... commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). "To state an equal protection claim, [Nicholson] must allege facts showing that: (1) he was treated differently from similarly situated individuals and (2) that the difference in or discriminatory treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of

constitutional rights, or malicious or bad faith intent to injure a person.'" *Trowell v. Theodarakis*, 2018 WL 3233140, at *3 (D. Conn. 2018) (quoting *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000)). Alternatively, an equal protection claim can sometimes be sustained if "[the plaintiff] claims that he has been irrationally singled out as a 'class of one.'" *Trowell*, 2018 WL 3233140, at *3 (quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008)). Because Nicholson does not allege that he was treated differently than any other similarly situated person or that he was singled out for arbitrarily discriminatory treatment, he has not alleged plausible grounds for relief under the Equal Protection Clause.

## CONCLUSION

In accordance with 28 U.S.C. § 1915A, the Court DISMISSES the complaint without prejudice. If Nicholson believes that he can allege facts that overcome the deficiencies identified in this ruling, he may file an amended complaint by **June 29, 2020**. The Clerk of Court shall administratively close this case subject to re-opening in the event that Nicholson chooses to file an amended complaint.

It is so ordered.

Dated at New Haven this 10th day of June 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge